## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MITCHELL CHARTOCK and | : | |
| TIKICO, LLC, | : | |
| | : | CIVIL ACTION |
|       Plaintiffs, | : | |
| | : | |
|   v. | : | |
| | : | NO.  14-2327 |
| AMTRAK, et al., | : | |
| | : | |
|       Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                    September 21, 2015

Currently pending before the Court is the Motion for Summary Judgment by Defendant[1]

National Railroad Passenger Corporation (hereafter, "Amtrak" or "Defendant") as to all claims

asserted by Plaintiffs Mitchell Chartock and Tikico, LLC (collectively, "Plaintiffs").  For the

following reasons, Defendant's Motion for Summary Judgment is granted.

## I.  FACTUAL HISTORY[2]

Plaintiff Tikico, LLC is the owner of the premises, and the property contained within it,

at 201 West Glenwood Avenue ("the premises"), which is adjacent to Defendant's right of way

in North Philadelphia and which was broken into on three occasions.  (Def.'s Mot. Summ. J. 2.)

---

[1] The caption in Plaintiffs' Complaint refers to two Defendants, Amtrak and National Railroad
Passenger Corporation.  (See Complaint.)  As the National Railroad Passenger Corporation is in
fact the same entity as Amtrak, throughout this Opinion the Court will refer to a single
Defendant.  See, e.g., U.S. Dept. of Transp., Fed. R.R. Admin., Amtrak Overview,
https://www.fra.dot.gov/Page/P0052 (last visited Aug. 21, 2015).

[2] The statement of facts is compiled from a review of the parties' statements of undisputed and
disputed material facts, briefs, and the evidence submitted in conjunction with those briefs.  To
the extent the parties allege a fact that is unsupported by evidence, the Court does not include it
in the recitation of facts.

Plaintiff Mitchell Chartock is the sole owner of Tikico, LLC.  (Id. at 2 n.1.)  During the first

break-in—which took place one week to nine days prior to the last break-in, which occurred on

November 15, 2013—a third party purportedly used a saw or drill to cut through the wall of the

premises adjacent to Amtrak's right of way.  (Id. at 2; Ex. E, Deposition of Phillip Chartock,

Feb. 3, 2015 ("Phillip Chartock Dep.") 36:9–37:18, 40:19–42:4, 49:15–50:6, 55:18–56:4.)  A

couple days after the first break-in, a third party cut through the wall again in the same general

vicinity.  (Def.'s. Mot. Summ. J. 3; Phillip Chartock Dep. 41:9–42:4.)  On November 15, 2013,

Philadelphia Police Officers who were lying in wait apprehended Carlos Rivera after he entered

the premises through the roof.[3]  (Def.'s. Mot. Summ. J. 3; Phillip Chartock Dep. 33:5 –12, Ex. F,

Philadelphia Police Department Report.)

       Neither Plaintiffs nor the former owners of the premises had previously had problems

with break-ins prior to November 2013.  (Def.'s. Mot. Summ. J. 3; Ex. C, Deposition of Mitchell

Chartock, Oct. 23, 2014 ("Mitchell Chartock Dep.") 24:24–25:12; Ex. D, Deposition of Louis

Chartock, Oct. 23, 2014 ("Louis Chartock Dep.") 29:15–23; Phillip Chartock Dep. 24:22–25:8,

51:3–17.)  Neither Plaintiffs nor the prior owners contacted Amtrak about security concerns prior

to the break-ins in November 2013.  (Def.'s. Mot. Summ. J. 3; Mitchell Chartock Dep. 25:25–

26:11; Louis Chartock Dep. 29:15–30:2, 49:5–16; Phillip Chartock Dep. 18:16–19:2.)  Plaintiff

Chartock's brother, Phillip, a prior owner of the premises, claims to have contacted Amtrak at

some point between the first and second break-ins in November 2013.[4]  (Def.'s. Mot. Summ. J.

---

[3] Plaintiffs assert that "[a]fter the second burglary and because Amtrak really did nothing to prevent the second burglary the Chartocks reported this to the Philadelphia Police Department." (Pls.' Resp. Opp'n Mot. Summ. J. 9.)  As noted below, Plaintiffs did not contact the Philadelphia Police Department after the first burglary occurred.  (See Phillip Chartock Dep. 51:3–17.)

[4] Plaintiffs claim that Phillip Chartock, along with Amtrak personnel, was allowed to enter the area of the Amtrak right of way to take photographs of the damage to the exterior of the building after the first burglary.  (Pls.' Resp. Opp'n Mot. Summ. J. 8.)  The pages of Phillip Chartock's

3; Phillip Chartock Dep. 46:10–47:2, 47:23–48:2.)  Phillip Chartock testified at his deposition

that he spoke to "McBride," an Amtrak investigator, for approximately one minute, after the first

break-in.[5]  (Phillip Chartock Dep. 47:3–50:11.)  Phillip did not speak to anyone at Amtrak aside

from McBride.  (Id. at 50:18–51:1.)  Phillip testified that McBride did not say anything to him

about contacting the Philadelphia Police, (id. at 50:15 –17), but McBride testified at a deposition

that he "tried to tell the person who called me that it was Philadelphia would be investigating

that.  I don't investigate property that doesn't belong to Amtrak."  (Pls.' Resp. Opp'n Mot.

Summ. J., Ex. H, Deposition of Francesco McBride, Nov. 18, 2014 ("McBride Dep.") 41:13–

17.)  McBride also testified that he "would tell them to go to the Philadelphia Police

Department."  (Id. at 48:9–17.)  In response to questioning about why he did not contact the

Philadelphia Police Department during the time between the first and second break-ins, Phillip

Chartock testified at his deposition that he considered the first break-in to be a "fluke," stating:

> I don't remember—I don't remember this ever happening before
> the history of my owning the company.  I don't remember, you
> know, people drilling holes through brick walls, you know.  It
> wasn't—it never happened, so I thought this was a fluke, maybe
> they did it and this would be the end of it, you know.  I didn't think
> it would repeat.

(Def.'s Mem. Supp. Mot. Summ. J. 3–4; Phillip Chartock Dep. 51:3–17.)  Plaintiff Mitchell

Chartock denies contacting Amtrak after the break-ins except to help his father, Louis Chartock,

obtain a phone number so that Louis could call Amtrak.  (Def.'s. Mot. Summ. J. 3 n.3; Mitchell

Chartock Dep. 25:25–26:8.)  Defendant asserts that there are no records of calls from any of the

Chartocks in Amtrak's possession, aside from records of calls Louis Chartock made on or after

---

deposition cited in Plaintiffs' brief do not support that claim.  Phillip Chartock actually testified
that he took photographs of the damage after the *third* break-in "when the Amtrak cop was there"
and they were out on the right of way area.  (Phillip Chartock Dep. 35:2–16.)

[5] McBride testified that he received the phone call on his cell phone, and that he did not know
how the Chartocks obtained the number.  (McBride Dep. 67:3–19; 76:22–23.)

the third break-in on November 15, 2013.  (Def.'s. Mot. Summ. J. 3 n.3; Ex. G, Deposition of

Amtrak Police Officer Frank McCann, Feb. 3, 2015 ("McCann Dep.") 59:3–61:8.)

　　　During discovery, Amtrak was ordered to produce "[p]olice incident reports, incident

reports and notices to the APD of property crimes" and all "investigations" concerning

"burglaries, break-ins, trespasses, property destruction & vandalism" which may have occurred

within a one-half mile radius of Plaintiffs' premises from November 11, 2011 to November 15,

2013.  (Def.'s. Mot. Summ. J. 4; Ex. H, Chartock v. Amtrak, Docket No. 14-2327, Document

No. 11, Order of Feb. 12, 2015.)  The Order also required Amtrak to produce similar documents

for the "C" yard in the vicinity of Plaintiffs' premises.  (Id.)  Amtrak produced records that

documented eighteen events along the right of way and nine events in the "C" yard.[6]  (Def.'s.

Mot. Summ. J. 4; Ex. I.)  Of the eighteen events along the right of way, all but one (which

concerned a hole in a fence) involved either trespassers coming onto Amtrak property or children

throwing stones at trains.  (Id.)  None of the events involved break-ins or any other property-

related crimes apart from trespassing.[7]  (Id.)  Of the nine events in the "C" yard, all concerned

---

[6] Defendant notes that Plaintiffs did not conduct further discovery related to the documents
produced in accordance with the Court's Order.  (Def.'s Mot. Summ. J. 5 n.5.)  Plaintiffs assert
that "it is unknown as to whether Amtrak actually complied with the Order and produced all
events requested."  (Pls.' Resp. Opp'n Mot. Summ. J. 3.)  Plaintiffs do not provide any support
for that assertion.

[7] Plaintiffs assert that "[d]uring discovery it was uncovered that a Verizon warehouse was
burglarized.  That warehouse was along the same right of way as the 201 Glenwood property, yet
no evidence or documentation was produced by Defendant[] concerning the Verizon break-ins."
(Pls.' Resp. Opp'n Mot. Summ. J. 4.)  Plaintiffs, however, do not cite to any exhibit or provide
any documentary support for their assertion that the burglary occurred or for their claim that
Defendant failed to produce documents regarding the burglary.
　　　Plaintiffs further assert that a 2013 Amtrak News Release describes the involvement of
Inspector Frank McBride in "several high profile cases involving copper wire theft" and the
resolution of fifty-two cases assigned to him.  (Pls.' Resp. Opp'n Mot. Summ. J. 4; Ex. E,
Amtrak News Release, May 14, 2013.)  Defendant notes that the majority of the thefts mentioned
in the article occurred in Delaware and Maryland, and that of the three that took place in

routine patrols conducted by Amtrak Police Officers, and none involved break-ins or any other property-related crimes.  (Def.'s. Mot. Summ. J. 5.)

Plaintiffs claim that Amtrak owns a portion of the wall of their premises through which the alleged break-ins occurred.  (Id.)  They base their claim upon a deed to and a survey of the premises, as well as a conversation that Louis Chartock had with James Shomper, from Amtrak's Real Estate Department, on November 18, 2013.  (Id.; Louis Chartock Dep. 54:4–21, 57:6–58:1.) According to Louis Chartock, Mr. Shomper reviewed his deed and said "it seems like the party line runs right through that wall . . . ."  (Def.'s. Mot. Summ. J. 5; Louis Chartock Dep. 54:4–21.) Mr. Shomper's deposition testimony, however, was that the deed and survey obtained by Louis Chartock do "not show ownership" of the wall for Amtrak.  (Def.'s. Mot. Summ. J. 5; Ex. J, Deposition of James Shomper, Feb. 3, 2015 ("Shomper Dep.") 22:16–23:7.)  Mr. Shomper's research showed that the railroad right of way preexisted Plaintiffs' premises, and that neither Amtrak nor a predecessor railroad was ever granted a property interest in the wall at issue, assuming that the property line for the right of way actually does run through the wall.  (Def.'s. Mot. Summ. J. 5; Shomper Dep. 68:5–22.)  In response to Plaintiffs' Interrogatories, Defendant stated that it "believes that a portion of Plaintiffs' building may encroach upon Amtrak's adjacent right of way."  (Pls.' Ex. F, Interrogatory No. 6 and Answer.)  Plaintiffs believe that statement supports their claim that "Defendant's [sic] acknowledge their control of the exterior wall."[8]  (Pls.' Resp. Opp'n Mot. Summ. J. 4.)  Defendant responds that it "has never

---

Philadelphia, none occurred within the geographic area described in the Court's discovery Order. (Def.'s Reply 3; Ex. K.)

[8] Plaintiffs further assert that the 1977 Deed and Survey "show that Amtrak had ownership or at least control of the outer portion of the wall," but they do not cite to any particular passage or language in any such document.  (Pls.' Resp. Opp'n Mot. Summ. J. 4.)  Plaintiffs also state that "Amtrak admits that they had control of the wall by claiming that the wall in question 'trespasses' onto Amtrak property," but again do not provide any citation or support for that

'acknowledge[d]' its 'control' of the wall of Plaintiffs' premises abutting its right of way."
(Def.'s Reply 3.)

Plaintiffs initiated this action by filing a Complaint in the Court of Common Pleas of
Philadelphia County on April 3, 2014.  Defendant removed the case to federal court on April 22,
2014.  Defendant filed a Motion for Summary Judgment on June 4, 2015.  Plaintiffs filed a
Response in Opposition on June 17, 2015.  Defendants filed a Reply on June 22, 2015.  As the
briefing process has been exhausted, Defendant's Motion for Summary Judgment is now ripe for
judicial consideration.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on
file, and any affidavits show that there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is
"material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to
return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence
that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv.
Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the
disputed evidence and decide which is more probative, or to make credibility determinations.
Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA

---

statement.  (Id.)  Defendant states that "[a]t most, Amtrak has noted that 'a portion of Plaintiffs'
building may encroach upon Amtrak's adjacent right of way.'"  (Def.'s Reply (quoting Pls.' Ex.
F, Interrogatory No. 6 and Answer).)  Without specific citations to particular documents or
language, Plaintiffs have not supported their assertions, including the assertion that "[t]he Deeds,
Surveys, etc., show that Amtrak controlled the outer part of the wall."  (Pls.' Resp. Opp'n Mot.
Summ. J. 11.)

Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.  Anderson, 477 U.S. at 249–50.

## III.    DISCUSSION

Plaintiffs claim that their property was burglarized by a third party as a result of Defendant's negligence.  After careful consideration, the Court finds that Defendant has demonstrated an absence of genuine issues of material fact, and that no reasonable fact-finder would be able to return a verdict in Plaintiffs' favor.  Accordingly, summary judgment for Defendant is appropriate, and Defendant's Motion for Summary Judgment is granted.

A.      **Count One:  Property Damage—Other**

Count One of the Complaint, titled "Property Damage—Other," alleges that Defendant (1) despite numerous complaints by Plaintiffs and others, failed to monitor, secure, and provide protection to Plaintiffs' property, which Plaintiffs claim was only accessible through Defendant's property; (2) allowed the breakdown and destruction of its own property such that it provided easy access to vandals who gained entry into and burgled Plaintiffs' property, despite being aware of the need to provide security and protection to its own property so as to prevent access to Plaintiffs' property; and (3) failed to take any appropriate security or preventive steps to avoid vandalism and burglaries which caused significant damage to Plaintiffs' property.[9]  (Compl. ¶¶ 8–13.)  Plaintiffs assert that Defendant's failures constitute negligence in fact and at law.  (Id. ¶¶ 15–16.)  The Court will first address whether Defendant owed Plaintiffs a duty of care, and then briefly address each aspect of Plaintiffs' negligence claim.

1.      **Whether Defendant Owed Plaintiffs a Duty of Care**

Defendant argues that its law enforcement duties do not extend to the protection of private property except in very limited circumstances which were not present in this case, and that, not only did Plaintiffs fail to identify in their Complaint the source of any duty that Amtrak owed Plaintiffs, but that no such duty exists.  (Def.'s Mem. Supp. Mot. Summ. J. 5.)

Under Pennsylvania law, "[f]or a party to prevail in a negligence action, ordinary or professional, the elements are identical: the plaintiff must establish the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the

_____

[9] Defendant interprets Count One as alleging two categories of negligence: (1) that "Amtrak 'allowed the breakdown and destruction' of its own property 'such that it provided easy access to vandals who were able to gain entry into Plaintiffs' property . . . '"; and (2) that "Amtrak failed 'to protect the plaintiffs' property . . . allowing vandalism and burglary . . . to occur . . . .'" (Def.'s Mot. Summ. J. 2 (quoting Compl. ¶¶ 10, 15).)

plaintiff suffered an actual loss or damages." Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009) (citing Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998)).

    Defendant first argues that federal law does not establish that it has a duty of care in these circumstances. It asserts that, under federal law, Amtrak has "authority to employ rail police to provide security specifically 'for rail passengers and property of Amtrak.'" (Def.'s Mem. Supp. Mot. Summ. J. 6 (quoting 49 U.S.C. § 24305(e)).) Defendant goes on to explain that, pursuant to 49 U.S.C. § 28101, it has no duty to protect anything but Amtrak property, even if its rail officers are permitted to act as police officers under state law. (Id.) Specifically, 49 U.S.C. § 28101 provides that

> a rail police officer who is employed by a rail carrier and certified or commissioned as a police officer under the laws of a State may enforce the laws of any jurisdiction in which the rail carrier owns property, to the extent of the authority of a police officer certified or commissioned under the laws of that jurisdiction, to protect—
> (1) employees, passengers, or patrons of the rail carrier;
> (2) property, equipment, and facilities owned, leased, operated, or maintained by the rail carrier;
> (3) property moving in interstate or foreign commerce in the possession of the rail carrier; and
> (4) personnel, equipment, and material moving by rail that are vital to the national defense.

49 U.S.C. § 28101. In addition, Defendant notes that Pennsylvania statutes pertaining to railroads likewise do not create a duty of care in these circumstances, because under Pennsylvania law, the authority of the Amtrak Police does not extend to crimes that are not related to railroad operations. (Def.'s Mem. Supp. Mot. Summ. J. 6.) Under the section entitled "General powers," 22 Pa. C.S. § 3303 provides that

> Railroad and street railway policemen shall severally possess and exercise all the powers of a police officer in the City of Philadelphia, in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority or elsewhere within this Commonwealth *while engaged in the discharge of their*

9

> *duties in pursuit of railroad, street railway or transportation*
> *system business.*

22 Pa. Cons. Stat. § 3303 (emphasis added).  Thus, according to Defendant, under both federal and state law its "right to engage in law enforcement activities is linked exclusively to railroad property and operations" and that "[i]t has no right, let alone an obligation[,] to provide such services to protect privately owned premises, such as Plaintiffs', [which are] unrelated to either" railroad property or operations.[10]  (Def.'s Mem. Supp. Mot. Summ. J. 6–7.)  Based on a plain reading of the federal and Pennsylvania statutes at issue, the Court finds that Defendant's interpretation is correct.

Finally, Defendant argues that the common law does not impose a duty on Amtrak to protect Plaintiffs' property.  It is significant that in Pennsylvania, "a duty must attach before . . . section 448 [of the Restatement of Torts] can be deemed applicable." Roche v. Ugly Duckling Car Sales, Inc., 879 A.2d 785, 796 (Pa. Super. Ct. 2005) (internal citations omitted).  "'When considering the question of duty, it is necessary to determine whether a defendant is under any obligation for the benefit of the particular plaintiff . . . and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence.'"  Id. at 789 (quoting Minnich v. Yost, 817 A.2d 538, 541 (Pa. Super. Ct.

---

[10] Plaintiffs argue that, under federal law as cited by Defendant, Amtrak can act "to protect basically Amtrak property or passengers" to the extent allowed under Pennsylvania law and that, under Pennsylvania law, Amtrak police are allowed "to act as, basically, Philadelphia police, in the immediate and 'adjacent' vicinity of the property of the corporate authority or elsewhere in this Commonwealth while engaged in the discharge of their duties in pursuit of railroad system business." (Pls.' Resp. Opp'n Mot. Summ. J. 14.)  According to Plaintiffs, therefore, "as cited by Defendant[], Amtrak had a duty to act as a Philadelphia police officer once they were notified (on November 5, 2013, of burglars entering the Glenwood property via the Amtrak property.) [.]"  (Id.)  In spite of Plaintiffs' assertions, the federal and Pennsylvania statutes Defendant cited, when read together, do not authorize Amtrak personnel to "basically" act as Philadelphia police at any time or for any purpose, and do in fact limit Amtrak's authority to its own property, employees, and passengers, and to other property being transported, when Amtrak personnel are engaged in pursuit of Amtrak business.

2003)). "Duty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time." Id. (citing Zanine v. Gallagher, 497 A.2d 1332, 1334 (Pa. Super. 1985). "Where the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions." Id. "The scope of this duty is limited, however, to those risks which are reasonably foreseeable by the actor in the circumstances of the case." Id.

In this case, where the parties were strangers to each other, the scope of any general duty of care that Defendant owed Plaintiffs is limited to risks that would have been reasonably foreseeable to Defendant. The question is thus whether Defendant should reasonably have foreseen that a third party would not only trespass on Amtrak property near Plaintiffs' premises, but also use Amtrak's right of way to trespass onto Plaintiffs' property in order to drill a hole through a brick wall to enable him to burgle Plaintiffs' property. Defendant asserts that "[t]he facts confirm Amtrak's awareness of people occasionally trespassing upon its right of way within a one half mile radius of Plaintiffs' premises . . . [but that] [w]holly absent is any evidence demonstrating that Amtrak knew or should have known that a trespasser was likely to break into Plaintiffs' premises."[11] (Def.'s Mem. Supp. Mot. Summ. J. 12.) In other words, "[t]here are no

[11] Plaintiffs argue that under the Restatement of Torts, Defendant has a duty to its neighbors "when it knows that its neighbors are being burglarized by people entering Amtrak property," and that their argument "seems fully compliant with § 448 of the Restatement of Torts as well as similar to case law where a neighbor creates conditions on property A, does nothing to remedy that condition and, as a result his neighbor is clearly damaged." (Pls.' Resp. Opp'n Mot. Summ. J. 12.) First, as discussed above, Plaintiffs have not established that Defendant knew that a third party was using Amtrak's right of way to burglarize Plaintiffs' premises prior to the third burglary. Second, Plaintiffs have not submitted any evidence to show that Defendant created conditions on its property that resulted in Plaintiffs being damaged. Most importantly, Plaintiffs have not demonstrated that it was reasonably foreseeable that a burglary would occur in the first place such that Defendant owed Plaintiffs a duty of care.

Plaintiffs next argue that "[a] possessor of land is subject to liability to others outside of the land physical harm caused by the disrepair of a structure . . . of the exercise of reasonable care . . . would have made it reasonably safe by repair or otherwise." (Id. (citing Restatement

facts that render the mere possibility of a break-in 'probable' and therefore *reasonably* foreseeable as required by law before a duty will arise." (Id. (emphasis in original).)  Indeed, as stated above, Plaintiff Mitchell Chartock's brother, a prior owner of the premises, described the first break-in as a "fluke" and stated that he did not contact the Philadelphia Police after the first break-in because he "didn't think it would repeat." (Phillip Chartock Dep. 51:3–17.)

Plaintiffs argue that "[i]t was apparent that there was a very concrete and highly probable risk that burglaries would (and did) continue unless and until Amtrak did something to keep trespassers off its right of way" and that "the events harming Tikico and Mitchell Chartock were more than probable, actually occurred." (Pls.' Resp. Opp'n Mot. Summ. J. 16.)  Plaintiffs' assertion regarding the probability of a burglary, however, is simply not supported by the facts submitted by the parties, and the fact that a burglary did occur does not mean that it was probable that one would occur, or that the burglar would return to the scene of the crime.[12]  As Defendant point out, "in a half mile radius of Plaintiffs' premises, [trespassing] occurred 17 times during the two year period preceding the first of the November 2013 break-ins . . . ." (Def.'s Reply 3.)[13] Seventeen incidences of trespassing in that amount of time is a fairly low number, and none of those trespassers broke into properties abutting the Amtrak right of way.  Plaintiff Mitchell

___

(Second) of Torts § 365).)  It is not entirely clear what Plaintiffs mean to argue, but there is no evidence in the record to show that Defendant permitted a structure to fall into disrepair such that it was unsafe.  That section of the Restatement, therefore, does not apply to the facts of this case.

[12] As Defendant notes, it was also possible that the "thieves would avoid a building that they had recently burgled[,] fearing that the owners had in the interim installed a burglar alarm or hired a security company[.]" (Def.'s Reply 2.)

[13] Defendant also argues that, "[a]ssuming that there have been 8.5 instances of trespass per year since 1977" in that geographic area "(based upon the 17 documented by Amtrak's discovery responses), that amounts to over 300 trespassers who did *not* break into Plaintiffs' property in the course of more than three decades." (Def.'s Reply 3 (emphasis in original).)  Defendant's example illustrates the difference between possible consequences and probable consequences, which must be considered in determining whether one party owes a stranger a duty of care.

Chartock's father purchased the premises in 1977, yet neither Plaintiff's father, Plaintiff's brother, nor Plaintiff testified or otherwise demonstrated that any break-ins occurred during their periods of ownership, prior to the burglaries that occurred in November 2013.  (See id.)  These facts undermine Plaintiffs' argument that it was probable that a burglary would occur in the manner described in this case.

Based on the facts presented by the parties, it was not probable, and therefore not reasonably foreseeable, that a third party would burglarize Plaintiffs' property by drilling or sawing holes through a brick wall to gain entry from the side of the building which abuts Defendant's right of way.  Because the event was not reasonably foreseeable, Defendant did not owe Plaintiffs a duty of care under Pennsylvania law.  As there was no duty of care, Plaintiffs cannot succeed in their negligence claim against Defendant.

Even if Defendant did owe Plaintiffs a duty of care, Plaintiffs have not shown that Defendant is liable for the criminal conduct of a third party.  According to the Restatement of Torts:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of the negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Restatement (Second) of Torts § 448.  According to Defendant, any liability on its part "hinges not only upon its negligently creating a situation which provided a third party with the opportunity to commit a crime, but also its actual or constructive awareness of that fact."  (Def.'s Mem. Supp. Mot. Summ. J. 7.)

Plaintiffs argue that "the word 'unless' in § 448 is read as part of the whole paragraph and gives Amtrak a duty once they have realized or should have realized the fact that a burglar could burglarize the Glenwood property by entering Amtrak property" and that "Amtrak was actually aware of the burglary of November 3, 2013." (Pls.' Resp. Opp'n Mot. Summ. J. 14–15.) The Court disagrees for several reasons. First, as discussed above, Plaintiffs have not shown that Defendant owed them a duty of care under these circumstances. Second, Plaintiffs have not demonstrated, using any evidence in the record, that Defendant engaged in negligent conduct that created a situation in which a third party would have an opportunity to burgle Plaintiffs' property. Finally, Plaintiffs have not established that Defendant knew, prior to the third burglary, that Plaintiffs' property had been burglarized by someone trespassing on Defendant's right of way.[14] As discussed above, Defendant did not owe Plaintiffs a duty of care under the circumstances described, and, therefore, Plaintiffs' reliance on the Restatement (Second) of Torts § 448 to establish a duty of care is misplaced.

In sum, as Defendant did not owe Plaintiffs a duty of care, Plaintiffs' negligence claim fails. Furthermore, Plaintiffs have not established that, if there had been a duty of care, that Defendant should be liable for the criminal act of a third party. Accordingly, Defendant's Motion for Summary Judgment must be granted.

### 2.   Plaintiffs' Allegation that Defendant Failed to Monitor, Secure, and Provide Protection to Plaintiffs' Property

Plaintiffs have not submitted any evidence to show that there were numerous complaints by Plaintiffs and others that would have alerted Defendant to any potential problem regarding monitoring, securing, or providing protection to Plaintiffs' property, even if Defendant had

---

[14] The deposition testimony presented by the parties establishes only that, prior to the third burglary, Plaintiff's brother contacted McBride, an investigator who advised him to contact the Philadelphia Police Department, and whose duties did not include investigating property that did not belong to Amtrak.

actually had a duty to provide monitoring, security, or protection services to Plaintiffs.  As discussed above, Defendant did not owe a duty of care to Plaintiffs with respect to their property.  Accordingly, Defendant is entitled to summary judgment on Plaintiffs' negligence claim based on Plaintiffs' theory that Defendant failed to monitor, secure, or provide protection to Plaintiffs' property.

   **3.   Plaintiffs' Allegation that Defendant Allowed the Breakdown and Destruction of its Own Property**

   In response to Plaintiffs' claim that Defendant allowed the breakdown and destruction of its own property, such that it provided easy access to vandals, Defendant points out that Plaintiffs deny being aware of any defects in Amtrak's right of way.  (Def.'s Mem. Supp. Mot. Summ. J. 5 (citing Mitchell Chartock Dep. 34:7–10).)  Defendant denies that it owned or possessed a portion of the wall of Plaintiffs' premises, and argues that neither the deed nor the survey on which Plaintiffs rely reference a grant of a property right in the wall to Amtrak.  (Def.'s Mem. Supp. Mot. Summ. J. 4–5.)  Defendant argues further that, even if it had a property interest in a portion of the wall, Plaintiffs have not submitted any evidence of any kind to show that a defect in the wall contributed to the break-ins in some way.  (Id. at 5.)

   Plaintiffs respond that "[t]here is a great deal of competent evidence that Amtrak had a proprietary interest in the wall i.e., nearby walls trespassing on Amtrak property and/or the fact that all deeds descriptions and surveys show property lines running through that wall thus making it a 'party wall.'"[15]  (Pls.' Resp. Opp'n Mot. Summ. J. 11.)  Plaintiffs also argue that

---

[15] Plaintiffs assert that they "intend to call and have listed as witnesses, City of Philadelphia surveyor and employee of the 5th Survey District, John Zamorski who will indicate that the survey does show a line through the northern wall which would indicate to him that it does give Amtrak a proprietary interest in the wall."  Plaintiffs' intent to call a particular witness at trial, however, does not equate to the submission of evidence sufficient to preclude summary judgment on their negligence claim.

> the [R]estatement of Torts, as cited by Defendants, clearly shows
> that Amtrak was notified of the break in of November 3, 2012, that
> they did nothing to prevent a second burglary and, basically,
> allowed the situation to deteriorate where 9 days after the
> November 5, 2013 burglary, a second burglary took place causing
> even more damage than the first burglary.

(Pls.' Resp. Opp'n Mot. Summ. J. 12.)[16]  Plaintiffs do not, however, rely on any evidence in

support of their general contention that the "situation" was allowed to deteriorate, nor do they

address Defendant's argument regarding the lack of evidence showing any defect in the wall that

could have contributed to the break-ins.  In fact, Plaintiffs deny any contention on their part "that

there is a 'defect in the wall' through which the burglars entered the premises" and assert that

"[o]n the contrary the wall was in excellent shape until broken into and . . . Phillip Chartock

estimated that it must have taken hours to drill holes through a wall that thick."  (Pls.' Resp.

Opp'n Mot. Summ. J. 4–5.)[17]  Accordingly, Defendant is entitled to summary judgment on

Plaintiffs' negligence claim based on Plaintiffs' theory that Defendant allowed the breakdown

and destruction of its own property.

### 4.  Plaintiffs' Allegation that Defendant Failed to Take Steps to Avoid Vandalism and Burglaries

Plaintiffs have not established that Defendant was generally required to take steps to

avoid vandalism and prevent burglaries from occurring on Plaintiffs' property, nor have they

established that Defendant owed them a duty of care under the circumstances of this case.  Nor

do Plaintiffs indicate what steps Defendant should have taken, particularly in the absence of

---

[16] Plaintiffs also argue that, under the Restatement of Torts, "Amtrak has a duty to its neighbors
when it knows that its neighbors are being burglarized by people entering Amtrak property."
(Pls.' Resp. Opp'n Mot. Summ. J. 12.)  As discussed above, Plaintiffs have not established that,
prior to the last burglary, Defendant knew that Plaintiffs' premises had been burglarized by
someone trespassing on the right of way.  In addition, the Restatement of Torts does not establish
that Defendant had a duty to prevent criminal acts by a third party on Plaintiffs' premises.

[17] Plaintiffs provide a citation to Phillip Chartock's deposition, but the page numbers do not
appear to correspond to testimony specifically supporting the assertions.

record evidence that Defendant knew that third parties were trespassing on its right of way in order to burglarize nearby properties.  Thus, Defendant is entitled to summary judgment as to Plaintiffs' negligence claim based on a theory that Defendant failed to take steps to avoid vandalism and burglaries.

## IV.     CONCLUSION

Having reviewed the briefs and their exhibits, the Court finds that Defendant has shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on each of Plaintiffs' negligence theories.  Accordingly, the Court shall grant Defendant's Motion for Summary Judgment.

An appropriate Order follows.