**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MITCHELL CHARTOCK and : | |
| TIKICO, LLC, : | |
|  : | CIVIL ACTION |
| Plaintiffs, : | |
|  : | |
| v. : | |
|  : | NO. 14-2327 |
| AMTRAK, et al., : | |
|  : | |
| Defendants. : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                           October 20, 2015

Currently pending before the Court is the Motion for Reconsideration[1] of Plaintiffs Mitchell Chartock and Tikico, LLC (collectively, "Plaintiffs"). For the following reasons, the Motion is denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this case is one familiar to all relevant parties and the Court, and is detailed in the Court's September 21, 2015 Memorandum Opinion granting summary judgment to Defendant Amtrak ("the Memorandum Opinion").[2] The Court will therefore only discuss the facts and procedural history relevant to the instant Motion.

Defendant filed a Motion for Summary Judgment on June 4, 2015, in which it argued that it was entitled to summary judgment on Plaintiffs' claims that Defendant's negligence caused

---

[1] Plaintiffs' submission is entitled "Plaintiff, Mitchell Chartock's Request for Reconsideration." For clarity and ease of reference, the Court will refer to Plaintiffs' submission as the "Motion for Reconsideration."

[2] See Mitchell Chartock & Tikico, LLC v. Amtrak, No. Civ.A.14-2327, 2015 WL 5584328, at *1–3 (E.D. Pa. Sept. 21, 2015).

1

their property to be burglarized by a third party.  Specifically, Defendant argued that it did not owe Plaintiffs a duty of care under federal, Pennsylvania, or common law, and that the burglaries were not reasonably foreseeable.  Plaintiffs filed a Response in Opposition on June 17, 2015, in which they argued that the burglaries were probable and that Defendant was obligated to protect their property.  On September 21, 2015, the Court entered a Memorandum Opinion granting Defendant's Motion for Summary Judgment.  In that Opinion, the Court reasoned that Defendant showed there was no genuine dispute as to any material fact and found that Defendant was entitled to judgment as a matter of law as to the entirety of Plaintiffs' Complaint.

Plaintiffs filed the present Motion for Reconsideration on October 1, 2015, asserting that there are problems with statements of fact and the Court's application of the summary judgment standard of review in the Memorandum Opinion.  (See Pls.' Mot. Reconsideration 2, 4.)[3]  Specifically, Plaintiff argues that the Court "based its decision to grant Summary Judgment on several misstatement [sic] of facts which Plaintiffs feel are of a substantive nature and very importation [sic]."  (Id. at 2.)  In addition, while "Plaintiffs have no disagreement with the recitation of F.R.C.P 56(c)(2) which allows for Summary Judgment if there are 'no genuine issues' as to any material fact[]," "[o]bviously the Plaintiffs feel that there are many issues of material fact that should be decided by a jury."  (Id. at 4.)  Defendant filed its Response in Opposition on October 6, 2015.  This matter is now ripe for judicial review.

## II.  STANDARD OF REVIEW

"'The scope of a motion for reconsideration . . . is extremely limited.'"  OR v. Hutner, 576 F. App'x 106, 110 (3d Cir. 2014) (quoting Blystone v. Horn, 664 F.3d 397, 415–16 (3d Cir. 2011)).  "'Such motions are not to be used as an opportunity to relitigate the case; rather, they

---

[3] The first page of Plaintiffs' Motion is numbered as page two.  For consistency, the Court will use Plaintiffs' numbering.

may be used only to correct manifest errors of law or fact or to present newly discovered evidence.'" Id. A motion for reconsideration filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure may be granted if the moving party shows: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court initially issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

Motions for reconsideration are granted sparingly. Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995). The grant of a motion for reconsideration is improper where it simply asks the court to "rethink what [it] had already thought through—rightly or wrongly." Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal quotations omitted). Moreover, motions for reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990). "Nor may a motion for reconsideration be used to revisit or raise new issues with the benefit of 'the hindsight provided by the court's analysis'" or to advance arguments that would not change the result of the court's initial ruling. Marshak v. Treadwell, No. Civ.A.95-3794, 2008 WL 413312, at *7 (D.N.J. Feb. 13, 2008), aff'd in part & remanded by 595 F.3d 478 (3d Cir. 2009) (quoting United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994)).

## III. DISCUSSION

In their Motion for Reconsideration, Plaintiffs assert that the Court relied on misstatements of fact and incorrectly applied the summary judgment standard of review. The Court will address each of these arguments in turn.

### A. Facts of the Case

#### 1. The Burglary Dates

Plaintiffs first dispute the Memorandum Opinion's reference to the burglary dates that Phillip Chartock testified to in his deposition. According to Plaintiffs, "[w]hile the fact witnesses may have been confused or not sure of the actual dates the police incident report clearly shows that the first break-in occurred November 15, 2012." (Pls.' Mot. Reconsideration 2.) It should first be noted that, according to the police incident report, it was the third and final break-in that occurred on November 15, and that it occurred in 2013, not 2012. (See Pls.' Resp. Opp'n Mot. Summ. J., Ex. B.) That document indicates that (1) the complainant was Plaintiff Mitchell Chartock, (2) on November 15, 2013, police apprehended a burglar at Plaintiffs' property during what was the third and final break-in, (3) the first burglary occurred on November 5, 2013, and (4) the second break-in occurred on November 13, 2013. (Id.)

Plaintiffs argue that the date of the first burglary in the police report, rather than the date Phillip Chartock testified to in his deposition, indicates that Defendant "had 8 days between the first two break-ins to take action (i.e.) to investigate the first break-in, increase patrols to prevent the second break-in[,]" rather than two days as indicated in the Memorandum Opinion. (Pls.' Mot. Reconsideration 3.) Defendant argues that the police report "is hearsay and of no evidentiary consequence" and that, while Plaintiffs may view the contradiction in dates as "confusion," "a witness'[s] contradictory statements cannot serve to create a genuine issue of material fact sufficient to defeat summary judgment." (Def.'s Resp. Opp'n Mot. Reconsideration 1–2.)

More importantly, however, it is not the number of days between break-ins that entitled Defendant to summary judgment on Plaintiffs' negligence claim. As discussed in the Memorandum Opinion, it was not probable, and therefore not reasonably foreseeable, that any of the burglaries would occur. Thus, Defendant did not owe Plaintiffs a duty of care under Pennsylvania law. Furthermore, as the Court discussed in the Memorandum Opinion, even if Defendant had owed Plaintiffs a duty of care, Defendant was not negligent in its conduct towards Plaintiffs such that Defendant could be found liable for the criminal conduct of a third party. These findings are not impacted by a discrepancy in the date of the second burglary, or the Memorandum Opinion's inclusion of a date testified to by Phillip Chartock instead of the date relayed to the police officers who prepared the police report on the date of the third burglary. Thus, Plaintiffs have not established one of the three grounds for reconsideration on this issue, and therefore the Court declines to reconsider its findings regarding duty of care.

### 2. The Outer Side of the Wall of Plaintiffs' Building

Plaintiffs next challenge the Court's discussion of "the issue of control and ownership of the outer side of the wall." Plaintiffs dispute the deposition testimony of James Shomper, an employee in Defendant's real estate department, in which he stated that the railroad right of way pre-existed Plaintiffs' building, because according to Plaintiffs "the building was built in the 1850's to 1860's and Amtrak did not come into existence until the 20th Century." (Pls.' Mot. Reconsideration 3 (citing Def.'s Mot. Summ. J. Ex. J, Deposition of James Shomper, Feb. 3, 2015 ("Shomper Dep.") 22:16–23:7).) Plaintiffs assert that they "produced into discovery numerous surveys, deeds, charts, etc." (Pls.' Mot. Reconsideration 3.) If that is the case, Plaintiffs neglected to attach any such documents as exhibits to their Response in Opposition to

Defendant's Motion for Summary Judgment. In their Motion for Reconsideration, Plaintiffs cite, for the first time, a portion of Louis Chartock's deposition testimony which "indicate[s] that Louis Chartock had personal knowledge that the building formerly known as Fletcher Works had been built in the 1850s, years before Amtrak came into existence."[4] (Id. (citing Deposition of Louis Chartock, Oct. 23, 2014 ("Louis Chartock Dep.") 55:10–56:20).).[5] As stated above, motions for reconsideration "'are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence.'" OR, 576 F. App'x at 110 (quoting Blystone, 664 F.3d at 415–16). Similarly, motions for reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." Brambles USA, Inc., 735 F. Supp. at 1240 (D. Del. 1990).

---

[4] Plaintiffs did not cite that portion of Louis Chartock's deposition testimony in their Response in Opposition to Defendant's Motion for Summary Judgment. Accordingly, the Court was not aware of Louis Chartock's belief that the building predated Amtrak's right of way, and was not obligated to consider it. Where the parties specifically cited exhibits attached to their briefs, the Court reviewed and considered those cited materials in deciding whether to grant summary judgment. See Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 (3d Cir. 2006) ("As noted by the Seventh Circuit, 'Judges are not like pigs, hunting for truffles buried in' the record.") (quoting Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys., 309 F.3d 433, 436 (7th Cir. 2002) (internal quotation omitted)); see also Perkins v. City of Elizabeth, 412 F. App'x 554, 555 (3d Cir. 2011) (noting that "a court is not obliged to scour the record to find evidence that will support a party's claims.") (citing Doeblers', 442 F.3d at 820 n.8); see also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").
Previously, the Court had only been presented with Plaintiffs' assertion that "[r]esearch has shown that the building was built in the 1850s" which was not supported by any citation to an exhibit or deposition testimony. (See Pls.' Resp. Opp'n Mot. Summ. J. 7.) Nevertheless, even if Plaintiffs had included references to Louis Chartock's belief as to the building's age, that is not a material fact which would have impacted the duty of care analysis.

[5] Plaintiffs incorrectly cite to pages 102–105 of Louis Chartock's Deposition. (See Pls.' Mot. Reconsideration 3.) The above citation is correct.

Plaintiffs also reassert Louis Chartock's belief that Mr. Shomper told him that the "ownership line" ran through the middle of the wall of Plaintiffs' building, and that it was a party wall. (Pls.' Mot. Reconsideration 3.) The Court included citations to Louis Chartock's testimony on that issue in the recitation of facts in the Memorandum Opinion, which conflicted with Mr. Shomper's deposition testimony that the deed and survey Louis Chartock obtained did not show ownership of the wall on Defendant's part. See Chartock, 2015 WL 5584328, at *3. As the Court noted in the Memorandum Opinion, Plaintiffs did not submit any record evidence to adequately support their contention that Defendant owned a portion of the outer wall of their property or which would establish a genuine issue of material fact sufficient to preclude summary judgment in Defendant's favor. See id. at *3 and n.8, *8 and n.15.

In the section of their Motion for Reconsideration regarding the outer wall, Plaintiffs make no argument that any of the grounds for granting such a motion are present. Instead, Plaintiffs merely describe testimony that the Court already considered and included in the Memorandum Opinion. Accordingly, the Court declines to reconsider its findings regarding Plaintiffs' wall.

### B. Standard of Review

Plaintiffs state that they "have no disagreement with the recitation of F.R.C.P 56(c)(2) which allows for Summary Judgment if there are 'no genuine issues' as to any material fact[]" but that "[o]bviously the Plaintiffs feel that there are many issues of material fact that should be decided by a jury." (Pls.' Mot. Reconsideration 4.) As discussed below, however, the "issues of material fact" identified by Plaintiffs are actually questions of law. Nonetheless, the Court will

briefly re-explain the basis for its findings in the Memorandum Opinion regarding the issues re-raised by Plaintiffs.

In the Motion for Reconsideration, Plaintiffs assert that "the Court felt that the Plaintiff failed to establish that the Defendant owed a duty of care resulting in injury to the Plaintiffs." (Id.) Even though Plaintiffs characterize this as an issue of material fact which should be decided by a jury, it is in fact a question of law. The Court will not repeat here the entire "Duty of Care" section of the Memorandum Opinion. It is sufficient for purposes of the current Motion to note that, after the Court discussed the relevant federal and state statutes concerning the authority of Amtrak police, as well as the common law of negligence as applied in Pennsylvania, the Court found that Defendant did not owe Plaintiffs a duty of care to prevent unforeseeable burglaries committed by a third party. See Chartock, 2015 WL 5584328, at *4–7.

Plaintiffs also state that the "Court next point[ed] out that according to Amtrak they only have a duty to police the property of Amtrak and its employee [sic], 49 USC Section 28101."[6] (Pls.' Mot. Reconsideration 4.) The Court, however, did not rely on Amtrak's say-so in determining that federal law does not establish a duty of care for Amtrak under these circumstances. Rather, the Court engaged in its own review of the relevant federal and Pennsylvania statutes and found that, despite Plaintiffs' assertions, "the federal and Pennsylvania

---

[6] As stated in the Memorandum Opinion, "49 U.S.C. § 28101 provides that 'a rail police officer who is employed by a rail carrier and certified or commissioned as a police officer under the laws of a State may enforce the laws of any jurisdiction in which the rail carrier owns property, to the extent of the authority of a police officer certified or commissioned under the laws of that jurisdiction, to protect—(1) employees, passengers, or patrons of the rail carrier; (2) property, equipment, and facilities owned, leased, operated, or maintained by the rail carrier; (3) property moving in interstate or foreign commerce in the possession of the rail carrier; and (4) personnel, equipment, and material moving by rail that are vital to the national defense.'" Chartock, 2015 WL 5584328, at *4–5 (quoting 49 U.S.C. § 28101).

statutes Defendant cited, when read together, do not authorize Amtrak personnel to 'basically' act as Philadelphia police at any time or for any purpose, and do in fact limit Amtrak's authority to its own property, employees, and passengers, and to other property being transported, when Amtrak personnel are engaged in pursuit of Amtrak business." Chartock, 2015 WL 5584328, at *5 and n.10. The legal import of statutory provisions governing Amtrak is not a question of fact for the jury, but rather one of law to be decided by the Court.

Plaintiffs next assert that the deposition testimony of two Amtrak employees, who are incorrectly referred to in Plaintiffs' Motion for Reconsideration as "Defendants," "clearly shows that, in the day-to-day operations, an Amtrak police offer as [sic] the right to act as Philadelphia Police Officer if they see a crime being committed on adjacent property." (Pls.' Mot. Reconsideration 4.) Plaintiffs argue that "[t]his is an issue to be decided by a jury despite the language of the aforementioned statute as though cited Philadelphia statutes this Court has been positioned." (Id.) The exact meaning of that sentence is quite unclear, but as explained above, the Court found that Amtrak police are limited by federal and state law not only in what actions they may take, but also where and when they make take them. Yet again, that is a question of law, not one of fact. Plaintiffs argue further that the deposition testimony of the Amtrak employees shows that "they clearly understood" that Amtrak police "can exercise all the powers of a police officer in the City of Philadelphia in and upon and in the immediate and adjacent vicinity of the property of the corporate authority while in [sic] engaged in the discharge of their duties in pursuit of railroad, street railway or transportation business." (Id. at 4–5 (citing 22 Pa. Cons. Stat. § 3303[7]).) According to Plaintiffs, "there was clearly a question for the jury as to

---

[7] As stated in the Memorandum Opinion, "[u]nder the section entitled "General powers," 22 Pa. C.S. § 3303 provides that "[r]ailroad and street railway policemen shall severally possess and exercise all the powers of a police officer in the City of Philadelphia, in and upon, and in the

9

whether Defendant police officers could have acted to secure the building and prevent further burglaries." (Id. at 5.) Plaintiffs' argument demonstrates their misunderstanding of the duty of care element in a negligence case—legal negligence is not merely about what one "could have done" differently in the past, but rather requires an analysis of whether an outcome was reasonably foreseeable and whether the defendant had a legal duty to act to prevent that outcome.

Finally, Plaintiffs argue that "[t]he Court feels that Amtrak personnel can only act on their own property but, once again isn't that a question for the jury indicates that the Defendant knew that a 3rd party was using the Amtrak's right of way to burglarize Plaintiff's [sic] premises." (Id. at 5.) First, the Court did not "feel" that Amtrak's policing authority is limited. The Court determined that, based on the federal and Pennsylvania statutes at issue, Amtrak police are not legally authorized to engage in policing whenever and wherever they like. Second, the issue of whether and when Amtrak "knew" that a third party was trespassing on the Amtrak right of way in order to drill a hole through a brick wall so that he could burglarize Plaintiffs' property is not relevant to the question of whether Amtrak had a duty of care to prevent such an event. Third, as explained in the Memorandum Opinion, even if someone at Amtrak other than Officer McBride had been contacted about the first break-in, Amtrak was not legally required to protect private property in the manner Plaintiffs desire, nor was it reasonably foreseeable that the break-ins would continue. Chartock, 2015 WL 5584328, at *4–5, 6.

Plaintiffs inaccurately assert that "[h]owever despite the Chartock's actual dates of burglaries, it is clear that Amtrak was notified after the first burglary and did nothing." (Pls.' Mot. Reconsideration 5.) When Phillip Chartock called McBride after the first break-in,

---

immediate and adjacent vicinity of, the property of the corporate authority or elsewhere within this Commonwealth *while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business*." Chartock, 2015 WL 5584328, at *5 (quoting 22 Pa. Cons. Stat. § 3303 (emphasis added)).

McBride did not "do nothing" but instead advised him to contact the Philadelphia Police Department. Chartock, 2015 WL 5584328, at *1. Phillip Chartock, believing the first burglary to be a "fluke," did not contact the Philadelphia Police. Id. at *1–2. Plaintiffs next assert that "[a]gain isn't it for the jury to determine if Amtrak had knowledge of the first burglary before the second burglary occurred? Chartock, despite not remembering the exact dates he indicated that he notified Amtrak after the first burglary." (Pls.' Mot. Reconsideration 5.) Plaintiffs again ignore the Court's findings that Amtrak did not have a duty of care under the circumstances of this case, and that, even if Amtrak had known of the first burglary, it was not reasonably foreseeable that the burglaries would continue.[8] Chartock, 2015 WL 5584328, at *6.

All of Plaintiffs' arguments under the "Standard of Review" section heading of their Motion for Reconsideration were previously considered and discussed by the Court in the Memorandum Opinion regarding summary judgment. As stated above, the grant of a motion for reconsideration is improper where it simply asks the court to "rethink what [it] had already thought through—rightly or wrongly." Glendon Energy Co., 836 F. Supp. at 1122. Plaintiffs have not established that any of the grounds for granting a motion for reconsideration are present. Instead Plaintiffs argue, incorrectly, that the Court's findings of law concerning statutory language and duty of care should have been presented as factual questions for a jury. Accordingly, the Court declines to reconsider its grant of summary judgment to Defendant on the basis of Plaintiffs' arguments.

---

[8] Plaintiffs insist that there is "an issue for the jury to decide that in discovery Defendants produced two phone calls made to McBride's office phone but produced nothing concerning the cell phone calls—probably because they would not have been recorded." (Pls.' Mot. Reconsideration 5.) If such records were produced in discovery, Plaintiffs did not attach them as exhibits to the Motion for Reconsideration, nor did they reference them in their Response in Opposition to Defendant's Motion for Summary Judgment or include them as exhibits to that brief.

## IV.  CONCLUSION

Based on the above discussion, the Court declines to reconsider the holding of its prior September 21, 2015 Memorandum Opinion granting summary judgment to Defendant. Accordingly, Plaintiffs' Motion for Reconsideration is denied.